At the center of this controversy are two adjacent lots in Groton. According to the complaint and exhibits incorporated by reference, the lots -- which are located at 116 and 120 Boston Road -- were once owned in common by Fairview Orchards, Inc. In 1996, in apparent anticipation of subdividing the land into the two lots, Fairview Orchards created an easement agreement to govern how future owners of the lots would address issues common to them, such as access, parking, and sewage disposal. Defendant Robert W. Anctil, an attorney, represented Fairview Orchards in crafting that agreement.
Subsequently, the lot at 116 Boston Road (lot 116) was acquired by Del Mondo LLC, a business in which the plaintiff, Dorothy Janes, held a substantial interest.[3] Janes herself now owns lot 116, having acquired title to it pursuant to a separation agreement in the divorce from her ex-husband. The lot at 120 Boston Road (lot 120) was purchased by an unrelated third party, PCM Realty Trust (PCM), and is now held by PCM, together with a related entity. In 2010, PCM laid plans to develop lot 120 in a manner that adversely affected lot 116.
According to the complaint, after having represented Fairview Orchards, Anctil played multiple other roles with respect to issues related to the lots. Specifically, the complaint alleges that, at various times, Anctil represented, advised, or acted on behalf of Fairview Orchards, Del Mondo, Janes, Janes's ex-husband, and PCM.[4] In the current action, Janes alleged, inter alia, that because of the multiplicity of roles that Anctil took on, he violated his ethical obligations to her. A Superior Court judge allowed the defendants' motion to dismiss, explaining his thinking in a thoughtful and comprehensive memorandum of decision. Janes filed a notice of appeal from this decision, and several months later filed a motion to vacate the judgment pursuant to Mass. R. Civ. P. 60 (b), 365 Mass. 828 (1974), which the judge summarily denied. In this consolidated appeal, we affirm.
Standard of review. In reviewing the allowance of a motion to dismiss we are required to accept the allegations of the complaint as true. Iannacchino v. Ford Motor Co., 451 Mass. 623, 625 n.7 (2008). However, those allegations "must be enough to raise a right to relief above the speculative level." Id. at 636, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "What is required at the pleading stage are factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief ...." Id., quoting Bell Atl. Corp., supra at 557.
Janes's legal malpractice claims. Although Janes's complaint alleged six counts, all of which were dismissed, her arguments on appeal are limited to her legal malpractice claims (set forth in count one, which sounds in contract, and count two, which sounds in tort). In short, Janes alleged that Anctil's representation of PCM in that entity's efforts to develop lot 120 violated his duties to her, his former client, pursuant to the applicable rules of professional conduct.
The mere fact that an attorney takes on a new client whose interests are adverse to a former client does not, without more, create an actionable conflict of interest. Instead, to make out a violation of the applicable rule of professional conduct, a party must show one of two things. One is that the representation of the new client involves "the same or a substantially related matter in which [the new client's] interests are materially adverse to [the interests of the former client]" (in which case the attorney is prohibited from representing the new client with respect to that matter absent the former client's consent). Mass. R. Prof. C. 1.9 (b) (1), as appearing in 471 Mass. 1359 (2015). The other is that the attorney misused confidential information he had obtained through his representation.[5] Id. at 1.9 (c) (1), (2).
In seeking to demonstrate that Anctil's work for PCM involved "the same or a substantially related matter in which [PCM's] interests [were] materially adverse to [hers]," Janes focuses on the fact that in representing PCM with respect to its efforts to develop lot 120, Anctil provided town officials a pro-PCM interpretation of the 1996 easement agreement that he himself had drafted, to the detriment of lot 116. Janes's argument that this may have violated Mass. R. Prof. C. 1.9 has at least some force. However, the former client for whom the easement agreement was drafted was Fairview Orchards, not Janes or any entities in which Janes had an interest. In an effort to address this shortcoming, Janes maintains that her eventually acquiring an interest in the easement agreement allows her to step into Fairview Orchard's shoes for the purpose of bringing a legal malpractice claim against Anctil. She has provided no support for that proposition, and we have not found any.
The question remains whether Janes's complaint states a legal malpractice claim based on Anctil's actual representation of her. In her complaint, Janes alleges that at various times, Anctil represented her directly or through representing Del Mondo (an entity in which she was a principal and held some sort of an interest). However, the complaint alleges almost no substance about the subject matter of that representation. The only allegation that Anctil's representation of Janes had anything to do with lot 116 is that "[i]n 2000, Anctil was engaged to help negotiate renovations to 116 Boston Road by Janes with the Planning Board of Groton." We agree with the judge that that single allegation "does not sufficiently plead that Anctil's representation of PCM was substantially related to any work Anctil did on behalf of Janes."
As noted, even if Anctil did not represent Janes on the same or substantially same matter, she could still make out a violation of rule 1.9 based on his misusing her confidential information. See Mass. R. Prof. C. 1.9 (c) (1), (2). Although Janes's complaint does allege that Anctil used "confidential information obtained through their professional and contractual relationship to act against her interests," it does not provide any substance about what that information was or how it was misused. In fact, the only alleged confidential information to which the factual allegations of the complaint allude is "special and private knowledge of [Janes's] life, thinking, and status." We agree with the judge that this was not sufficient, even at the pleading stage. A complaint is insufficient if it rests on " 'naked assertion[s]' devoid of 'further factual enhancement' " (citation omitted). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See id. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").
The rule 60 (b) motion. Neither at the hearing on the motion to dismiss, nor at any other time prior to entry of judgment, did Janes seek leave to amend her complaint. Instead, Janes waited until after judgment entered and an appeal was not only filed, but docketed, to file a motion to vacate the judgment pursuant to Mass. R. Civ. P. 60 (b). That filing included an affidavit in which Janes specifically alleged that Anctil had advised her with respect to the easement agreement (thereby arguably supplying a basis for Janes's assertion that, without her approval, Anctil had represented PCM on the same matter on which he had advised her). Anctil opposed the motion arguing, inter alia, that it was inexcusably tardy. The same judge who had dismissed the complaint denied the rule 60 (b) motion "[f]or all the reasons stated in the defendant's opposition." Regardless of whether we ourselves would have issued the same ruling, we cannot reasonably say that the judge abused his discretion in denying the rule 60 (b) motion. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (defining abuse of discretion as occurring "where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision ... such that the decision falls outside the range of reasonable alternatives" [citations and quotations omitted] ).
Conclusion. In sum, we discern no error in either the judge's ruling that Janes's complaint failed to state a legal malpractice claim, or in his denial of her rule 60 (b) motion.
Judgment affirmed.
Order denying rule 60 (b) motion affirmed.

The complaint is less than clear on the precise nature of this enterprise and the ownership interest that Janes held in it.

In fact, the complaint alleges that Anctil played other roles that potentially raised conflicts of interest: representing a bank that supplied PCM with a mortgage to buy lot 120, serving on the board of Emerson Hospital (which may have some interest in PCM's development of the parcel), and being a special town employee (based on his service on a town board).

Specifically, the rule prohibits the attorney from "us[ing] confidential information relating to the [earlier] representation to the disadvantage of the former client or for the lawyer's advantage or the advantage of a third person" and from "reveal[ing] confidential information relating to the representation" (with both prohibitions subject to certain exceptions not here applicable). Mass. R. Prof. C. 1.9 (c) (1), (2).